UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BRUCE ELLIOTT BOLDT,

            Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

           Defendants.

Case No. 3:17-cv-05229-TLF

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

      Bruce Elliott Boldt has brought this matter for judicial review of defendant's denial of his application for disability insurance benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13.

      Mr. Boldt seeks reversal of the ALJ's decision and remand for further administrative proceedings, arguing the ALJ erred in evaluating the medical opinion evidence. Specifically, Mr. Boldt contends that the ALJ erred by failing to consider the opinion evidence of an examining physician, Dr. John Kooiker, M.D., and a treating psychologist, Dr. Carole DeMarco, Ph.D. Dkt. 11, pp. 2-7. Mr. Boldt also argues the ALJ's failure to properly evaluate the medical evidence caused further error because the error in assessing medical evidence led to error in determining Mr. Boldt's RFC, and also led to error in finding Mr. Boldt could perform other jobs existing in significant numbers in the national economy. Dkt. 11, p. 7. For the reasons set forth below, the

ORDER - 1

Court agrees. Accordingly, the Court will reverse the decision to deny benefits and remand for further administrative proceedings.

On December 10, 2012, Mr. Boldt filed an application for a period of disability and disability insurance benefits, alleging that he became disabled beginning October 25, 2005. Dkt. 9, Administrative Record (AR) 13. That application was denied on initial administrative review and on reconsideration. *Id.* A hearing was held before an administrative law judge (ALJ) in June 2014. AR 55-88. Mr. Boldt appeared and testified, as did a vocational expert. AR 13. In a written decision in August 2014, the ALJ found that Mr. Boldt could perform jobs existing in significant numbers in the national economy and therefore was not disabled. AR 164-80.

The Appeals Council later vacated that decision and remanded it to the ALJ. AR 13. On remand, the ALJ held another hearing, on March 22, 2016. AR 89-125. Mr. Boldt testified again, as did a vocational expert. *Id.* In a written decision on August 19, 2016, the ALJ again found that Mr. Boldt could perform jobs existing in significant numbers in the national economy and therefore was not disabled. AR 13-32. The Appeals Council denied Mr. Boldt's request for review on February 10, 2017, making the ALJ's decision the final decision of the Commissioner. AR 1. Mr. Boldt then appealed that decision in a complaint filed with this Court on March 28, 2017. Dkt. 1; 20 C.F.R. § 404.981.

## I. STANDAND AND SCOPE OF REVIEW

The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.520. If the ALJ finds the claimant disabled or not disabled at any particular step, the ALJ makes the disability determination at that step and the sequential evaluation process ends. *See id*. At issue here is the ALJ's weighing of different pieces of medical evidence and his resulting assessment of Mr. Boldt's RFC and conclusion that Mr. Boldt could perform jobs existing in significant numbers in the national economy.

This Court affirms an ALJ's determination that a claimant is not disabled if the ALJ applied "proper legal standards" in weighing the evidence and making the determination and if "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). This requires "'more than a mere scintilla,'" though "'less than a preponderance'" of the evidence. *Id.* (quoting *Desrosiers*, 846 F.2d at 576). In reviewing the record, the Court must weigh both the evidence that supports the Commissioner's decision and evidence that detracts from that decision, considering the record as a whole. *Id.* at 675. The Court's scope of review is limited to the reasons provided by the ALJ in his or her decision; the Court may not affirm on a ground that the ALJ did not rely upon. *Id.*

This Court will uphold the ALJ's findings if "inferences reasonably drawn from the record" support them. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). If more than one rational interpretation may be drawn from the evidence, then this Court must uphold the ALJ's interpretation. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

## II. MEDICAL OPINION EVIDENCE

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the evidence is inconclusive, "'questions of credibility and resolution of conflicts are functions solely of the [ALJ]'" and this Court will uphold those conclusions. *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). As part of this discretion, the ALJ determines whether inconsistencies in

the evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant" in deciding how to weigh medical opinions. *Id.* at 603.

The ALJ must support his or her findings with "specific, cogent reasons." *Reddick*, 157 F.3d at 725. To do so, the ALJ sets out "a detailed and thorough summary of the facts and conflicting clinical evidence," interprets that evidence, and makes findings. *Id.* The ALJ does not need to discuss all the evidence the parties present but must explain the rejection of "significant probative evidence." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted). The ALJ may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. And the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

"The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" 20 C.F.R. § 404.1527(c)(2); *Trevizo,* 871 F.3d at 675. In general, the ALJ gives more weight to a treating physician's opinion than to the opinions of physicians who do not treat the claimant. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Nonetheless, an ALJ need not accept a treating physician's opinion that "is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson*, 359 F.3d at 1195; *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

To reject the uncontradicted opinion of either a treating or examining physician, an ALJ must provide "clear and convincing" reasons. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). When other evidence contradicts the treating or examining physician's opinion, the ALJ
ORDER - 4

must still provide "specific and legitimate reasons," supported by substantial evidence, to reject that opinion. *Trevizo*, 871 F.3d at 675. An ALJ should weigh the physician's opinion according to factors such as the nature, extent, and length of the physician-patient working relationship, the frequency of examinations, whether the physician's opinion is supported by and consistent with the record, and the specialization of the physician. *Id.*; *see* 20 C.F.R. § 404.1527(c)(1)-(6). Finally, a non-examining physician's opinion may constitute substantial evidence for an ALJ's findings if that opinion "is consistent with other independent evidence in the record." *Tonapetyan*, 242 F.3d at 1149.

      A. <u>Examining Psychiatrist: John Kooiker, M.D.</u>

Dr. Kooiker examined Mr. Boldt on September 19, 2009. AR 714. In a mental status examination, he found Mr. Boldt's "persistent feature" to be his "persistent anger," observing that his "speech was accelerated" and that he stood and moved around for part of the interview. Dr. Kooiker recounted Mr. Boldt's statements to him, including that he had shot himself in the ribs, he felt tired and depressed, and he had "suicidal ideas daily." Dr. Kooiker reiterated his impression that Mr. Boldt was "very angry." AR 715.

Dr. Kooiker diagnosed Mr. Boldt with "features of major depression" and scored him at 47-50 of 100 on the Global Assessment of Functioning (GAF) scale,[1] citing "[s]erious symptoms, serious impairment of social and occupational functioning, and suicidal ideation." AR 715. Dr. Kooiker described Mr. Boldt's status as "fixed and stable" but also noted "episodic loss

---

[1] A global assessment of functioning ("GAF") score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" *Pisciotta v. Astrue*, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (citation omitted). "A GAF score of 41-50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as inability to keep a job." *Langley v. Barnhart*, 373 F.3d 1116, 1123 n.3 (10th Cir. 2004) (quoting Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) ("DSM-IV-TR") at 34).

of self-control" and "risk of causing damage to community or self." AR 716. He opined that Mr. Boldt's "[p]rognosis for returning to work appears to be very unlikely at this point." *Id.*

The ALJ assigned Dr. Kooiker's opinion "little weight." AR 28. Mr. Boldt contends that the ALJ gave insufficient reasons for doing so.

As a preliminary matter, the Commissioner asks this Court to uphold the ALJ's decision for several reasons the ALJ did not state. She contends that the ALJ was justified in rejecting Dr. Kooiker's opinion because Dr. Kooiker opined on an issue reserved to the Commissioner in stating that Mr. Boldt was "unlikely" to be able to return to work; because Mr. Boldt's activities of daily living were inconsistent with the limitations Dr. Kooiker assessed; and because Mr. Boldt searched for work after his disability's alleged onset date. Dkt. 12, pp. 5-7.

"Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225–26 (9th Cir. 2009) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)). Following these principles, the Court declines to review the post-hoc reasons the Commissioner offers for the ALJ's decision.

Moreover, none of the reasons the ALJ gave for rejecting Dr. Kooiker's opinion were specific and legitimate.

First, the ALJ stated broadly that Dr. Kooiker's opinions were "inconsistent with the overall medical evidence of record as stated above." As the Ninth Circuit has explained,

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

ORDER - 6

*Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988). Accordingly, although the ALJ had reviewed Mr. Boldt's medical record earlier in the ALJ's decision, his vague statement about Dr. Kooiker's opinion is inadequate to justify rejecting it. *See* AR 19-25. The record shows Dr. Kooiker had reviewed extensive clinical evidence of Mr. Boldt's mental illness that caused severe impairment in his ability to function at work; Dr. Kooiker cited Boldt's loss of self-control, a risk that Boldt would cause damage to the community, and a risk that he might cause harm to himself. AR 714-16. Dr. Kooiker also referred to Mr. Boldt's history of attempted suicide and recurrent depressive episodes. *Id.*

Second, the ALJ stated that Mr. Boldt's "representation and performance during the examination was generally unremarkable from a mental health standpoint." AR 28. The record does not support this reason. As noted above, Dr. Kooiker observed Mr. Boldt's "speech was accelerated" throughout the interview, Mr. Boldt stood and moved around, and "persistent anger" was the interview's dominant feature. AR 714. The ALJ could not reasonably infer from these statements that Mr. Boldt presented as "generally unremarkable." *See Batson*, 359 F.3d at 1193.

Third, the ALJ explained that "the medical evidence shows that the claimant's mental health symptoms responded well to medication." But Dr. Kooiker made the same finding. *See* AR 716 (noting that "chart indicates that antidepressant medication has been helpful"). While Dr. Kooiker recommended medication "on an indefinite basis," he nonetheless opined that Mr. Boldt had "very unlikely" prospects of returning to work. *Id.* As an examining physician, Dr. Kooiker was in a better position to evaluate Mr. Boldt's condition given the finding that medication had helped him. *See Gonzalez Perez v. Secretary of Health and Human Services*, 812 F.2d 747, 749 (1st Cir. 1987) (ALJ may not substitute own opinion for findings and opinion of

physician). The ALJ gave no explanation why he reached the opposite conclusion based on the same facts. *See* AR 28. Mr. Boldt's improvement with medication was thus not a specific and legitimate basis on which to reject Dr. Kooiker's opinion.

Finally, the ALJ rejected Dr. Kooiker's opinion because it "appears to be based, at least in part, on the claimant's subjective complaints." AR 28. The ALJ found those complaints unreliable because "evidence in the record strongly suggest[s] that the claimant exaggerated the severity of his symptoms." AR 28.

"If a treating provider's opinions are based 'to a large extent' on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). But an ALJ has "no evidentiary basis" to reject an opinion that "is not more heavily based on a patient's self-reports than on clinical observations." *Id.* The Ninth Circuit in *Ghanim* observed that the treating providers' evaluations discussed "observations, diagnoses, and prescriptions, in addition to Ghanim's self-reports." *Id.* The Court held that the ALJ erred because he "offered no basis for his conclusion that these opinions were based more heavily on Ghanim's self-reports, and substantial evidence does not support such a conclusion." *Id.*

The Commissioner relies on the ALJ's statement that Dr. Kooiker's opinion was based "at least in part" on unreliable self-reports by Mr. Boldt. But the court in *Ghanim* clearly contemplated that medical sources rely on self-reports to varying degrees, and it held that an ALJ may reject a medical source's opinion as based on unreliable self-reports only when the medical source relied "more heavily" "on a patient's self-reports than on clinical observations." *Ghanim*, 763 F.3d at 1162. Because the ALJ erred in failing to make such a finding here, it is unnecessary

ORDER - 8

to consider whether the record would support one.[2] The ALJ's decision to reject Dr. Kooiker's opinion because the doctor based it on Mr. Boldt's self-reports is neither legitimate nor supported.

The Commissioner asserts that Mr. Boldt has waived this argument by not challenging the ALJ's underlying determination that Mr. Boldt's reports of his symptoms were not fully credible. The Commissioner is incorrect: the Court does not need to consider that underlying determination, because, as discussed above, the ALJ did not find that Dr. Kooiker relied "more heavily" on those self-reports than on clinical observations. Thus, regardless of whether those self-reports were credible, the ALJ's explanation was not valid.

Because the ALJ did not offer specific and legitimate reasons, supported by the record, to reject Dr. Kooiker's opinion, the Court must reverse the ALJ's decision that Mr. Boldt is not disabled and remand for further proceedings. *See Trevizo*, 871 F.3d at 675.

B. Treating Psychologist: Carole DeMarco, Ph.D.

Dr. DeMarco performed psychological evaluations of Mr. Boldt in September 2010, January 2011, and May 2011. AR 480, 495, 511. She opined that Mr. Boldt suffered from depression and symptoms of anxiety—such as sleeplessness, shaking, and anger—that "interfere[d] with his daily functioning." 482, 498, 514. She assessed a GAF score of 41 in each report. *Id.* She based these opinions on clinical observations, clinical interview, and behaviors that "indicate an individual who continues to experience Depression and symptoms of Anxiety." AR 497.

---

[2] In addition to considering Mr. Boldt's self-reported symptoms, Dr. Kooiker reviewed Mr. Boldt's medical history and made clinical findings based on a mental status exam. AR 712-16. Thus, even if the Court reached this issue, Dr. Kooiker's evaluation would not support a finding that he relied primarily on Mr. Boldt's self-reports.

1    The ALJ did not address any of these opinions. Rather, the ALJ considered a letter that

2   Dr. DeMarco wrote in July 2010 concurring with Dr. Kooiker's opinion. Dr. DeMarco referred

3   to that letter at the beginning of her September 2010 psychological evaluation of Mr. Boldt. AR

4   480.

5    The ALJ rejected Dr. DeMarco's concurring opinion, along with the GAF score of 41

6   that she assessed, "for the reasons discussed above." AR 28. Presumably the ALJ was referring

7   to the reasons he gave for rejecting Dr. Kooiker's opinion. Because, as discussed above, those

8   reasons were not specific and legitimate, the ALJ erred in rejecting Dr. DeMarco's opinion on

9   the same basis.

10   Moreover, Dr. DeMarco did not, as the ALJ implied, simply "affirm[ ] Dr. Kooiker's

11  opinion." AR 28. She also independently performed three psychological evaluations of Mr.

12  Boldt. AR 480, 495, 511. The ALJ does not appear to have considered the opinions Dr. DeMarco

13  reached as part of these evaluations. "[A]n ALJ errs when he rejects a medical opinion or assigns

14  it little weight while doing nothing more than ignoring it, asserting without explanation that

15  another medical opinion is more persuasive, or criticizing it with boilerplate language that fails

16  to offer a substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012–13 (9th

17  Cir. 2014). The ALJ erred by overlooking Dr. DeMarco's opinions in this case.

                                III.    RFC Assessment

19   A claimant's residual functional capacity (RFC) assessment is used at step four of the

20  sequential evaluation process to determine whether he or she can do his or her past relevant

21  work, and at step five to determine whether he or she can do other work. Social Security Ruling

22  (SSR) 96-8p, 1996 WL 374184 *2. The RFC is what the claimant "can still do despite his or her

23  limitations." *Id.*

A claimant's RFC is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *Id.* However, an inability to work must result from the claimant's "physical or mental impairment(s)." *Id.* Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." *Id.* In assessing a claimant's RFC, the ALJ must also discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7.

The ALJ found Mr. Boldt had the RFC

> **to perform medium work, as defined in 20 CFR § 404.1567(c), that did not require standing for more than 20 minutes at one time and two hours in an eight-hour workday; that did not require sitting for more than 45 minutes at one time and six hours in an eight-hour workday; that did not require walking for more than 15 minutes at one time and one and-a-half hours in an eight-hour workday; that did not require below shoulder lifting of more than 40 pounds occasionally and 20 pounds frequently; that did not require above shoulder lifting of more than 30 pounds occasionally and none frequently; that did not require more than occasional carrying; that did not require pushing or pulling more than 60 pounds occasionally and 30 pounds frequently; that did not require more than frequent kneeling; that did not require more than occasional crouching and crawling; that did not require more than seldom (10% of the workday) stooping and climbing; that did not require more than frequent operation of foot controls with the right lower extremity and occasional operation of foot controls with the left lower extremity; that did not require more than occasional reaching overhead; that did not require more than frequent fingering or handling; that consisted of simple tasks that required little or no judgment; and that did not require more than frequent interaction with co-workers or the general public.**

AR 18 (emphasis in the original).

Because as discussed above the ALJ erred in considering the medical opinion evidence, the ALJ's RFC assessment likewise does not include a consideration of the medical evidence that would completely and accurately describe all of Mr. Boldt's functional limitations. Consequently, the hypothetical question the ALJ posed to the vocational expert—and thus that

expert's testimony and the ALJ's reliance thereon—were not supported by substantial evidence or free of error, either.

## IV.  REMAND

This Court has discretion to either remand for additional proceedings, or to remand for award of benefits. *Trevizo v. Berryhill*, 871 F.2d 664, 682 (9th Cir. 2017). If there are uncertainties or ambiguities in the record, and a remand would be useful to remedy the errors that led to reversal, the Court should remand for additional proceedings. *Leon v. Berryhill*, No. 15-15277, slip. op. at 12 (9th Cir. November 7, 2017); *Revels v. Berryhill,* 874 F.3d 648, 668 (9th Cir. 2017). In this case the ALJ erred in failing to properly consider the medical opinion evidence; a remand would be useful to remedy the errors that led to reversal. The ALJ is directed to consider the treating psychologist's and the examining psychiatrist's medical opinions and related medical evidence in light of the record as a whole. After doing so, the ALJ must apply the appropriate medical evidence to the evaluation of Mr. Boldt's residual functional capacity and the determination of whether he is able to work despite limitations.

## V.  CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ improperly determined Mr. Boldt to be not disabled. The Commissioner's decision to deny benefits therefore is REVERSED and this matter is REMANDED for further administrative proceedings.

Dated this 21st day of November, 2017.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge